ESTATE OF WALDO C. BRYANT, DECEASED, WALDO GERALD BRYANT AND IDA BRYANT, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 72383. Promulgated October 19, 1937.

*David S. Day, Esq.*, and *J. G. Korner, Jr., Esq.*, for the petitioners.

*Lewis S. Pendleton, Esq.*, for the respondent.

#### OPINION.

BLACK: Petitioners seek redetermination of a $91,246.29 deficiency in estate tax. Respondent in his answer makes claim for an increased deficiency. The proceeding was submitted on the pleadings and a stipulation of facts. We adopt the stipulation of facts and the exhibits attached thereto as our findings of fact. Several of the issues were agreed upon in the stipulation and effect will be given thereto under Rule 50. The issues remaining are whether any part of the value of the corpora of three transfers in trust made by decedent during his lifetime in 1917, 1920, and 1902, respectively, is to be included in his gross estate under section 302 of the Revenue Act of 1926. The respondent does not contend that the transfers were made in contemplation of death.

Waldo C. Bryant, the decedent, was born December 17, 1864, and died, testate, July 5, 1930, a resident of Connecticut. Petitioners are the duly appointed and qualified executors of his estate. Ida Bryant is decedent's widow; Waldo Gerald, his son.

*1917 Transfer.*—On July 2, 1917, an indenture of trust was made between decedent as party of the first part and the Bankers Trust Co. as party of the second part, sometimes called "trustee", under which decedent transferred to the trustee certain securities in trust, the income from which, after deducting trustee's commissions and other trust expenses, the trustee was to pay as and when received:

\* \* \* unto IDA BRYANT, wife of the party of the first part, for and during the term of her natural life; upon the death of said Ida Bryant, to pay the net income to the party of the first part for and during the term of his life.

Upon the death of the survivor of said Ida Bryant and the party of the first part, unless this trust shall have been modified or revoked as hereinafter provided, to convey, transfer and pay over the principal of the trust fund to the executors or administrators of the estate of the party hereto of the first part.

The trust indenture contained the following provision relative to modification, alteration or revocation:

TENTH: Notwithstanding anything to the contrary herein contained, the party of the first part and said Ida Bryant during the period when both shall

be living and at any time or times during the continuance of the trusts herein provided for may, by instrument in writing executed and acknowledged or approved by them in the manner required for a deed of real estate (so as to enable such deed to be recorded in the State of New York), delivered to the Trustee, modify or alter in any manner or revoke in whole or in part this indenture and any or all of the trusts then existing and the limitations of estates and interest in property hereby created and provided for subsequent to such trusts; and in case of such modification, alteration or revocation, such instrument shall direct the disposition to be made of the trust funds or of that part of the trust funds affected by such modification, alteration or revocation * * *. In case of the death of either the party of the first part or his wife, the said Ida Bryant, the survivor of them shall have the same right and privilege to modify, alter or revoke the instrument in any manner whatsoever, by giving a notice in writing to the Trustee * * *.

On December 22, 1923, decedent and his wife modified the trust relative to trustee's commissions. Since then there have been no alterations or other modifications. The trust has never been revoked and at the time this proceeding was submitted was still in force and effect.

Decedent was survived by his wife, Ida Bryant, born September 13, 1868. Under article 10 of decedent's last will, executed June 14, 1930, decedent gave, devised, and bequeathed to the Bankers Trust' Co. "all my right, title and interest, and the right, title and interest of my estate in and to a certain trust fund held by said Bankers Trust Company under a deed of trust from myself to said Bankers Trust Company, dated July 2, 1917" in trust, nevertheless, for the benefit, after the death of his wife, Ida Bryant, of his children and grandchildren. Paragraph (d) of said article ten of decedent's last will provided:

The trust herein created is not intended and shall not be construed as a modification of said trust deed of July 2, 1917, or said modification of December 22, 1923, or to affect in any way the rights, interests and powers of the said IDA BRYANT thereunder, but only to dispose of the interest vested by said trust deed and modification in myself or my estate.

The value of the entire corpus of the trust executed on July 2, 1917, as of date of decedent's death was $767,706.62; and the value of the remainder thereof, after excluding the value of the wife's right to the income for life, was $478,918.42.

Petitioners in filing the estate tax return did not include in decedent's gross estate the value of any part of the corpus of the July 2, 1917, trust, but submitted with the return a copy of the trust instrument and a list of the securities making up the corpus of the trust, together with the quoted prices thereof on the last business day prior to the date of decedent's death.

The respondent in determining the deficiency herein included in decedent's gross estate, under the provisions of section 302 (c) of the Revenue Act of 1926, the amount of $478,918.42 as representing the

"remainder value of trust created under date of July 2, 1917." In his answer the respondent affirmatively alleged that "there should be included in decedent's gross estate the full value of the corpus of the trust executed by the decedent under date of July 2, 1917, pursuant to the provisions of subdivisions (a), (c) and/or (d) of section 302 of the Revenue Act of 1926, instead of the present worth of the reversionary interest in the corpus of such trust as of the date of decedent's death, which said reversionary interest was included in the gross estate by respondent at a value of $478,918.42 * * *."

We shall first consider respondent's affirmative allegation stated above, that the "full value" of the corpus should be included in decedent's gross estate under subdivisions (a), (c) and/or (d) of section 302 of the Revenue Act of 1926. This allegation was made prior to the two Supreme Court decisions of *Helvering* v. *Helmholz*, 296 U. S. 93, and *White* v. *Poor*, 296 U. S. 98. Under these decisions it is settled that no part of the corpus could be included under subdivision (d), since the trust was created prior to the Revenue Act of 1924, and decedent could not alter, amend, or revoke except in conjunction with his wife, who was the life beneficiary. *Mary Q. Hallock et al., Trustees*, 34 B. T. A. 575, 579. Neither could the value of the wife's life estate be included under subdivisions (a) or (c), as affirmatively alleged. Cf. *May* v. *Heiner*, 281 U. S. 238. The respondent's contention that any value of the corpus of the July 2, 1917, trust in excess of the reversionary interest determined by him in the amount of $478,918.42 should be included in decedent's gross estate is, therefore, denied.

We will now direct our attention to the principal issue involved in this proceeding, namely, whether on July 5, 1930, the date of decedent's death, there was vested in decedent a reversionary interest in the corpus of the July 2, 1917, trust and, if so, whether the value of such reversionary interest should be included in decedent's gross estate. The parties have stipulated "that if there were in the decedent on July 5, 1930, a vested reversionary interest in the corpus of the said trust, the value of which is includable in the gross estate for Estate Tax purposes, the value thereof on July 5, 1930, was $478,918.42."

The applicable statute is the Revenue Act of 1926, the material provisions of which are as follows:

SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

(a) To the extent of the interest therein of the decedent at the time of his death;

* * * * * * *

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended

to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * *

In administering the above statute the respondent promulgated Estate Tax Regulations No. 80, article 11 of which provides in part as follows:

The value of a vested remainder should be included in the gross estate. Nothing should be included, however, on account of a contingent remainder where the contingency does not happen in the lifetime of the decedent, and the interest consequently lapses at his death. Nor should anything be included on account of an interest or an estate limited for the life of the decedent. *There should be included, however, the value of a reversionary interest retained by the decedent*, which reverts upon the termination of a particular estate, or in case of his prior death passes to others. [Italics supplied.]

In determining whether on the date of his death decedent was vested with a reversionary interest in the corpus of the 1917 trust we are governed by the laws of the State of Connecticut, in which decedent was then domiciled. *Kinney's Estate* v. *Commissioner*, 80 Fed. (2d) 568, and cases therein cited on that point.

The Supreme Court of Errors of Connecticut was called upon to consider this very trust in a proceeding by William H. Hackett, tax commissioner, against Ida Bryant, executrix of the estate of Waldo C. Bryant, deceased, concerning a succession and transfer tax imposed upon the said estate by the State of Connecticut. See *Bryant* v. *Hackett*, 118 Conn. 233; 171 Atl. 664. Petitioners herein especially rely upon this case, saying at page 35 of their reply brief:

We believe the respondent's argument is completely answered. His whole case is predicated on the assumption that Mr. Bryant had a vested remainder or vested reversionary interest at the time of his death. The Supreme Court of Connecticut has held that he did not. We believe that is a sufficient answer to his argument.

The respondent in his reply brief took issue with petitioners as to what the Supreme Court of Connecticut held.

Two questions were before the Connecticut court—(1) whether the statute in effect when the trust was created or the statute in effect when the decedent died should govern, and (2) if the statute in effect when the decedent died should govern, whether the remainder interests in the principal of the fund after the termination of Mrs. Bryant's life estate were taxable within the intent of that statute. The statute in effect when the decedent died was enacted in 1929. See General Statutes of Connecticut, Revision of 1930, pp. 465 to 483.

The court first stated the facts relative to the July 2, 1917, trust, which were in substance the same as we have stated above, with this one exception that the court made no reference to the fact that Waldo C. Bryant left a will, but decided the case apparently on the

assumption that Bryant died intestate. Whether Bryant died testate or intestate was not material in deciding the questions before the court, and we mention this difference in the facts in order that the later quoted excerpts from the court's opinion herein can at once be reconciled with the facts as we have stated them.

In deciding the first question the court deemed it important to determine whether the decedent's heirs at law acquired vested remainders at the time the trust was created in 1917 or at the time the decedent died in 1930. If the remainders vested in 1917, the court was of the opinion that to apply the 1929 statute would be unconstitutional, upon the authority of *Coolidge* v. *Long*, 282 U. S. 582, and that, therefore, it would be necessary to apply the statute in effect when the trust was created. The court held, however, that the remainders vested on the date of decedent's death and that the applicable statute was the one enacted in 1929. In so holding it said in part:

The transfer before us does not fall within that decision (*Coolidge* v. *Long*, *supra*), because the trust agreement here in question created no vested rights aside from the life uses provided for. If the agreement was not revoked or modified, the remainder interests would pass to the executors or administrators of Mr. Bryant, that is, to those entitled to receive his estate under the statute of distributions; and who these would be could only be ascertained at his death. If the agreement were revoked before his death, the property might pass as a part of his estate to those entitled to receive that estate at his death or he might dispose of it before his death. If the agreement was revoked after his death, the property would pass as a part of his estate. Either before or after his death, the agreement might be so modified that the principal of the property would pass to persons whose identity could in no way be foreseen; while after the death of Mr. Bryant, Mrs. Bryant might no doubt so modify the agreement as to vest in her an immediate right to receive the property and it could not be known until after his death whether or not she would do this. It is essential to constitute a vested right, in contradistinction to one that is expectant or contingent, that the right to enjoyment, present or prospective, has become the property of some particular person or persons as a present interest. [Citations.] The trust agreement before us created no vested rights beyond those of Mr. and Mrs. Bryant to receive the income of the property until the death of the survivor or until the agreement was revoked or so modified as to terminate their rights.

The opinion of the majority of the court in *Coolidge* v. *Long* rests largely upon the fact that the succession and interests of the five sons were complete when the trust was created and the death of the settlors was in no sense a generating source of any right in them. In the instant case, the agreement not having been revoked or substantially modified, at the death of Mr. Bryant his heirs in law became certain and each of them then acquired an interest in remainder, subject to the life use of Mrs. Bryant and subject to being divested should she revoke the trust or so modify it as to change or destroy that interest. [Citations.] Before Mr. Bryant's death, the only person who could look forward to receiving the property at the termination of the life uses were those who might anticipate that they would become his heirs at law, and they had a

mere expectancy; by his death those who were in fact his heirs at law acquired definite property rights in the principal of the fund. His death had, therefore, a definite and certain effect upon the rights of those who, subject to a possible later divestment, would receive the principal of the fund.

If the test of the constitutionality of the application of a statute passed after property had been transferred upon such a trust, but before the death of the transferor, be the fact that that death must be generating source of a right in remainder [citation], that condition is met in this case.

The court continued for a while on the first question, then discussed the second question, and concluded as follows:

In the case of the Bryant estate, our answer to the questions propounded is that the taxability of the transfers is to be determined by the statute in effect at Mr. Bryant's death, that its application will not offend against any provision of the United States Constitution, and that the remainder interests in the principal of the fund consequent upon the termination of the right of Mrs. Bryant to receive the income are taxable within the intent of that statute.

In the instant proceeding petitioners, in support of their contention that the Supreme Court of Connecticut held that decedent did not on the date of his death own a vested reversionary interest in the corpus of the 1917 trust, rely particularly upon those parts of the above quoted portion of the court's opinion which say that the trust agreement created no vested rights aside from the life uses provided for. We think the respondent correctly answers this contention in his reply brief wherein he says:

* * * The court said that the trust agreement "created" no vested rights aside from the life uses provided for. One does not "create" an estate in reversion. A reversion is what is left or remains in the grantor after he has created or conveyed less than his entire interest or estate in property.

The court did not specifically say in so many words that upon the creation of the trust in 1917 the grantor retained a reversionary interest in the principal of the trust fund and that such interest remained vested in him until the day of his death, but it seems to us that unless that were true there would be no basis for the court's holding that "at the death of Mr. Bryant his heirs at law became certain and each of them then acquired an interest in remainder"; that "by his death those who were in fact his heirs at law acquired definite property rights in the principal of the fund"; and that, "His death had, therefore, a definite and certain effect upon the rights of those who, subject to a possible later divestment, would receive the principal of the fund."

It is therefore our opinion and we so hold that on the date of his death there was vested in decedent a reversionary interest in the corpus of the July 2, 1917, trust. We think this reversionary interest, the value of which was stipulated to be $478,918.42, should be included in the decedent's gross estate under the provisions of the

above cited statute and regulations and also upon the authority of *Klein* v. *United States*, 283 U. S. 231, and *Luis James Phelps et al., Executors*, 27 B. T. A. 1224.

Petitioners cite as controlling authority such cases as *Helvering* v. *St. Louis Union Trust Co.*, 296 U. S. 39; *Becker* v. *St. Louis Union Trust Co.*, 296 U. S. 48, and a great many more along the same line. The difference between that line of cases and the instant proceeding is that in the former the decedents had only a mere "possibility of a reverter" whereas here, as we have held above, the decedent on the date of his death owned a "vested reversionary interest" subject only to being divested in case the surviving life beneficiary (Ida Bryant) exercised her power to revoke the trust and designate to whom the principal was to be paid. Petitioners say, without citing any authority therefor, that this power in the hands of the life beneficiary is tantamount in law to the fee in the trust. "But the existence of the power does not of itself vest any estate in the donee." *United States* v. *Field*, 255 U. S. 257, and cases there cited. The court in *Bryant* v. *Hackett, supra*, held "that the remainder interests in the principal of the fund consequent upon the termination of the right of Mrs. Bryant to receive the income are taxable within the intent" of the Connecticut succession and transfer tax statute, notwithstanding the said remainder interests were subject to being divested in whole or in, part. We know of no valid reason why the above mentioned vested reversionary interest should not be included in decedent's gross estate.

Petitioners also rely to a great extent upon *Frederick Davis Van Sicklen et al., Executors*, 35 B. T. A. 306. That case, no doubt, comes nearer supporting petitioners' contentions than any other case they cite, as the life beneficiary here also had the power to revoke the trust. But we believe that case is distinguishable from the instant case in one important particular. The grantor in the *Van Sicklen* case did more than just grant a life interest, as is the case here. He created contingent remainders "to any children of the said beneficiary then living" and, if not living, then to their issue. The corpus would eventually go to the heirs of the decedent only if the life beneficiary died without descendants and without having revoked the trust. We do not think the instant case quite reaches the line of those cases that have been held to be outside of the taxing statute.

There is one more point that should be mentioned. Petitioners devoted the larger part of their reply brief to the contention that on the date of decedent's death he could not have owned a vested reversionary interest in the corpus of the trust for the simple reason that he had in 1917 conveyed every vestige of right or estate he had

in the property to a separate person, namely, the trustee; that thereafter the trustee held the legal title to the property; and that whatever estate passed to another thereafter would pass from the trustee and not from the decedent. It seems to us that this is substantially the same contention as was made in *Estate of Winifred H. Kinney*, 30 B. T. A. 604; affd., 80 Fed. (2d) 568. The contention was rejected by both the Board and the Circuit Court of Appeals for the Ninth Circuit, which affirmed our decision.

On the issues pertaining to the 1917 transfer we conclude, therefore, that the respondent correctly included in decedent's gross estate the amount of $478,918.42 as a "vested reversionary interest" in the corpus of the July 2, 1917, trust, and that he is not entitled to include any value in excess of the said vested reversionary interest.

*1920 Transfer.*—On March 26, 1920, decedent transferred a United States Liberty bond of the face value of $5,000 to the First-Bridgeport National Bank and himself as cotrustees. After trust expenses were paid the annual net income was to be paid to Doris Bryant, daughter of decedent, during her life. Upon the death of said Doris Bryant:

\* \* \* said trust shall terminate, and I direct said Trustees to transfer and pay over the principal of said trust fund, including any accumulations thereto, to the said Waldo C. Bryant, if he be then living, but, if he be then deceased, to Ida Bryant, the wife of the said Waldo C. Bryant, and if neither the said Waldo C. Bryant nor the said Ida Bryant be then living, to the issue of the said DORIS BRYANT then surviving, in equal shares per stirpes, and if the said Waldo C. Bryant, the said Ida Bryant, or issue of the said DORIS BRYANT be not then surviving, I direct said Trustees to transfer and pay over to Waldo Gerald Bryant, son of the said Waldo C. Bryant, said trust fund and accumulations, or, if he be not then living to his then surviving issue, in equal shares per stirpes; and, if none of the said named and described persons are then living, I direct said Trustees to pay over said trust fund and accumulations to the heirs of the said Waldo C. Bryant other than those above named and described.

The said 1920 trust contained no provision for revocation, amendment, or alteration by any person whatsoever, and was still in force and effect at the time this proceeding was submitted. Doris Bryant was born March 26, 1902, and at the time this proceeding was submitted was still living. .

Petitioners in filing the estate tax return did not include in decedent's gross estate the value of any part of the corpus of the March 26, 1920, trust, but submitted with the return a copy of the trust instrument and a present inventory of the trust property. The respondent determined that by reason of the March 26, 1920, transfer there should be included in decedent's gross estate "the value of a reversionary interest retained by the decedent, which reverts upon

# 678

the termination of a particular estate or in case of his prior death passes to others." The respondent determined the value of this alleged "reversionary interest" to be the amount of $3,605.85.

The issue pertaining to this trust requires no extended discussion. Suffice it to say that decedent's death simply put an end to what, at best, was a mere possibility of a reverter by extinguishing it. *Helvering* v. *St. Louis Union Trust Co., supra; Mary Q. Hallock et al., Trustees, supra.* The respondent's determination on this issue is disapproved.

*1902 Transfer.*—On February 20, 1902, decedent executed a trust indenture by and in which he conveyed to the Union Trust Co. of New Haven, Connecticut, certain designated securities in trust, to hold, manage, invest, and reinvest for the uses and purposes following:

2d. To pay over the net income thereof, semi-annually or oftener, in the discretion of said Trust Company, to my sister, Flora A. Bryant, of Winchendon, Massachusetts, for and during her life.

3rd. Upon the death of said Flora A. Bryant, to pay over said net income, semi-annually, or oftener, in the discretion of said Trust Company, to my mother, Almeda Bryant, for and during her life.

4th. Upon the death of said Almeda Bryant, or in case she shall die before said Flora A. Bryant, then upon the death of said Flora, to pay over said net income, semi-annually, or oftener, in the discretion of said Trust Company, to my father, Calvin T. Bryant, for and during his life.

5th. Upon the death of the last survivor of said Flora A. Bryant, said Calvin T. Bryant and said Almeda Bryant, to pay over and convey the securities and property then forming the principal of said trust fund to such of my children as may then be living, and the issue, then living, of such as may then have deceased, to be equally divided between them, share and share alike, and to be theirs absolutely and forever, the issue of a deceased child to take the share to which his, her or their parent would have been entitled if living; whereupon this trust shall cease and determine.

The said 1902 trust contained no provision for revocation, amendment or alteration, and at the time this proceeding was submitted it was still in force and effect. At the date of decedent's death, the first named beneficiary, Flora A. Bryant, born November 17, 1862, was living and at the time this proceeding was submitted was still living. The second and third named beneficiaries, Almeda Bryant and Calvin T. Bryant, were dead.

Petitioners in filing the estate tax return did not include in decedent's gross estate the value of any part of the corpus of the February 20, 1902, trust, but submitted with the return a copy of the trust instrument and a present inventory of the trust property, with a statement that "All of said securities represent either original securities and reinvestments of the same or securities added to said trust

prior to September 9, 1916." The respondent in his determination of the deficiency did not determine or include any value on account of this trust. In his answer the respondent affirmatively avers that in redetermining the deficiency "there should be included in the decedent's gross estate the full value, as of the date of the decedent's death, of the corpus of the trust executed by the decedent on February 20, 1902, pursuant to the provisions of subdivisions (a) and/or (c) of the Revenue Act of 1926 * * *." The parties have stipulated that "the full value of the assets constituting the corpus of the said Trust, on July 5, 1930, was $10,000.00."

In his brief the respondent stated that two questions are involved as to this trust, namely, (1) Should the entire value of the corpus of the trust created by the decedent on February 20, 1902, be included as a part of the decedent's gross estate? and (2), Was the decedent at the time of his death the owner of the reversion in the corpus of the trust created by him on February 20, 1902, and, if so, should the value thereof be included as a part of the gross estate? He then proceeded to argue only the second question.

We do not think that any value whatever should be included in decedent's gross estate as to the 1902 trust. At the time it was made it was irrevocable, complete, and was not made in contemplation of death. It was not testamentary in character and was beyond recall. Every vestige of interest of decedent passed out of him at that time. The only remote possibility of a reversion to decedent or his estate would depend upon one of the three life beneficiaries (sister, mother, and father of decedent, respectively) outliving all of decedent's children and grandchildren. The transfer is not taxable, under such decisions as *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339; *May* v. *Heiner, supra,* and *Helvering* v. *St. Louis Union Trust Co., supra; Mary Q. Hallock et al., Trustees, supra.* The respondent's contentions as to this trust are, therefore, denied.

The deficiency will be recomputed in accordance with this opinion.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

SMITH dissents on the holding that on the date of his death the decedent owned a "vested reversionary interest" in the principal of the trust fund, the agreed value of which should be included in his gross estate under section 302 (a) and (c) of the Revenue Act of 1926.